**Benjamin Raymond MALIK, Plaintiff-Appellee,**

v.

**APEX INTERNATIONAL ALLOYS, INC., a subsidiary of Alumax, Inc., Defendant-Appellant.**

**No. 83–2563.**

United States Court of Appeals, Tenth Circuit.

May 6, 1985.

---

1. The Hon. Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

David L. Thomas of Crowe & Dunlevy, Oklahoma City, Okl. (Robert G. McCampbell and Crowe & Dunlevy, P.C., Oklahoma City, Okl., with him on the briefs) for defendant-appellant.

Ben A. Goff, Oklahoma City, Okl. (Gloyd L. McCoy, Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Before LOGAN and BREITENSTEIN, Circuit Judges, and O'CONNOR*, District Judge.

BREITENSTEIN, Circuit Judge.

Apex International Alloys, Inc. (Apex), appellant-defendant, appeals from a judgment entered on a jury verdict awarding Benjamin Malik, appellee-plaintiff, $50,-000.00 in actual damages and $75,000.00 in punitive damages. We affirm.

Plaintiff began working for Apex at its metal foundry in Checotah, Oklahoma, in October, 1978. He worked as a laborer

* Chief Judge of the United States District Court for the District of Kansas, sitting by designation.

initially then as a forklift operator for six to eight months before becoming a furnace helper. In 1980 he sustained a series of work related back injuries. On February 4, 1980, he strained his back while bending over to pick up a briquette. He returned to work two days later. Tr. 126, 141.

On June 3, 1980, he fell over a nitrogen hose onto a jackhammer while backing away from a furnace blast. Tr. 74, 126–127. Plaintiff was taken to Muskogee Memorial Hospital where he was examined and kept home for several days. Stuart Morton, Apex's personnel manager, asked plaintiff to return to light duty work for a short period of time and delay filing a workmen's compensation claim as in ten days Apex would receive a six-month award for no lost time because of an accident. Tr. 18, 75. Light duty involved sweeping floors and answering telephone calls. After a week of this light work, he began driving a forklift.

He was taking medication for the injuries he had previously sustained. In July, 1980, he became ill at work. He was told by his supervisor to go to the computer room which was downstairs from his work area and get another employee to either take him home or to a doctor. Plaintiff slipped and fell while descending the stairs. Tr. 76–77. He was taken to the Muskogee Memorial Hospital where he spent ten days undergoing tests and treatment. It was recommended that he undergo back surgery. Tr. 20, 77. The surgery was performed in January, 1981, by Dr. Payne, who released plaintiff on January 25, 1982 with the restriction that he refrain from repetitive lifting of objects over 75 pounds. Tr. 63. The doctor said that he could drive a forklift. Tr. 58.

Morton disputed the validity of plaintiff's compensation claim concerning the third injury. Tr. 20. When plaintiff returned to work he was told by Morton that he could not do so with his restrictions. Tr. 84, 93, 143. Morton sent plaintiff to the defendant's doctor, Dr. Baker, who, in a report dated January 28, 1982, recommended, R. 119:

"I feel that this patient can return to gainful employment, but I would recommend that he avoid repetitive lifting and should not lift more than 50–60 pounds at any one time."

On February 9, 1982, plaintiff was discharged for the reason that the company "has concluded that Ben Malik is physically unable to perform his job classification without causing a safety hazard to himself and his fellow employees." R. 120.

Morton testified that plaintiff was discharged because there were no jobs available that he could perform. Tr. 37. Plaintiff testified that he could have performed the forklift operator or furnace helper positions with his restrictions. Tr. 86–87.

Plaintiff believed that he was discharged in retaliation for filing a workers' compensation claim. Tr. 116–125. He testified that when he reported his second injury claim to the plant manager, Phil Kaminski, Kaminski became angry and said that he could not possibly have hurt his back in the manner he described. Tr. 79, 118. After this injury, he presented Morton the hospital bill and Morton became angry saying that the company would have to pay it. Tr. 170. Plaintiff testified as to the difficulties he experienced in obtaining his temporary disability payments for the time he was unable to work. Tr. 79–80, 82–83. Plaintiff also testified as to a company problem with late temporary disability payments. Tr. 103. Plaintiff finally obtained an order from the Workers' Compensation Court for temporary disability payments. Tr. 83, 109–110. After he was released to return to work, his temporary disability payments were discontinued. Tr. 83. He settled his permanent disability claim after his termination. Tr. 109. On November 2, 1982, plaintiff filed suit alleging that the defendant discharged him in retaliation for filing a workers' compensation claim in violation of 85 O.S. §§ 5 and 6. The jury returned a verdict for the plaintiff awarding him $50,000.00 in actual damages and $75,000.00 in punitive damages.

On this appeal the defendant contends that it was error to award punitive damages. Section 6, 85 O.S. provides:

"A person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation."

In *WRG Construction Company v. Hoebel,* Okl., 600 P.2d 334, 335–336, the court held that the district court's jurisdiction conferred by 85 O.S. § 7 to restrain violations of the Workers' Compensation Act is sufficiently broad to include "to redress." In *Webb v. Dayton Tire & Rubber Co.,* 697 P.2d 519, the court held that the jurisdiction of the district court under § 7 was sufficiently broad to include punitive damages as provided by 23 O.S. § 9:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

In *Webb* the court said, p. 522:

"We today likewise adopt the view that the jurisdiction of the District Court to restrain retaliatory dismissal of employees in violation of the Workers' Compensation Act is sufficiently broad to include the assessment of damages for the sake of example and by way of punishing the defendant under appropriate circumstances, as provided in other tort actions governed by § 9 of the general damage provisions of Title 23."

■ The defendant argues that, even if punitive damages are an available remedy, the district court erred in awarding them under the facts of this case because there was no showing of oppression, fraud, or malice. Malice is defined as a wrongful act done intentionally without just cause or excuse. *Bliss v. Holmes,* 156 Okl. 40, 9 P.2d 718, 719; *Bennett v. City National Bank and Trust Company,* Okl.App., 549 P.2d 393, 397. On the evidence presented, a jury could reasonably find that the defendant acted with malice.

Defendant argues that it was error to allow plaintiff's mental pain and suffering because mental anguish is not an available remedy under 85 O.S. § 6. Plaintiff testified concerning his unsuccessful efforts to find another job and the effect this had on his family and himself. Tr. 97–98 and 105–107. Plaintiff's wife testified as to the effect the loss of plaintiff's job had on the family. Tr. 68–70.

■ The district court held that mental anguish constituted "reasonable damages" within the meaning of 85 O.S. § 6. Webb, supra, requires us to read 85 O.S. §§ 6 and 7 together with 23 O.S. § 9. The court stated in Webb, supra, slip opinion at p. 5, "we take cognizance of the legislative intent that the trier of fact be vested with broad discretion in determining the amount of recovery as manifested by the terms 'reasonable damages' and 'to restrain violations.' " We conclude that the Oklahoma Supreme Court would, if faced with this case, allow recovery of damages for mental anguish under §§ 6 and 7 of the Workers' Compensation Act.

■ Defendant argues that, even if this court should find that the Workers' Compensation Act permits recovery of damages for mental anguish, plaintiff cannot recover because he suffered no accompanying physical injury. The Oklahoma Supreme Court held in *Mashunkashey v. Mashunkashey,* 189 Okl. 60, 113 P.2d 190, 191, that "mental pain and suffering may constitute the basis of an independent action in cases of willful wrong of the character where mental suffering is recognized as the ordinary, natural and proximate result of such wrong." In *Mashunkashey* the plaintiff was fraudulently induced to enter into a bigamous marriage and the court allowed recovery for mental pain and suffering even though it was not pled as an independent cause of action and there was no physical injury. Id., 113 P.2d at 191. Oklahoma courts have awarded damages for mental anguish unaccompanied by physical injury in other circumstances involving intentional violations of individual

rights. *Bennett v. City National Bank and Trust Company,* Okl.App., 549 P.2d 393, 398–399 (threatening and abusive telephone calls regarding debt collection); *Reeves v. Melton,* Okl.App., 518 P.2d 57, 63 (trespass and breach of peace in attempting to take possession of goods). In the case at bar the plaintiff did not have to prove accompanying physical injury to recover for mental anguish because the actions of the defendant were intentional.

 Defendant argues that plaintiff was required to plead and prove the independent tort of intentional infliction of emotional distress in order to recover for mental anguish. As we have said, mental anguish is included in "reasonable damages" under 85 O.S. § 6. Plaintiff is not required to plead a separate tort. *Mashunkashey,* supra, 113 P.2d at 191.

Defendant asks this court to order a remittitur of $100,000.00 if we should fail to reverse the trial court's denial of defendant's motion for new trial and for judgment notwithstanding the verdict. Remittitur is granted only where the verdict is so grossly excessive that "it shocks the conscience of the court." See *Spaeth v. Union Oil Co. of California,* 10 Cir., 710 F.2d 1455, 1460. The verdict in this case does not rise to such a level.

Affirmed.